IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN DOE, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO. 1:16-cv-01266-TWP-DKL |
| v. | ) |
| | ) |
| BUTLER UNIVERSITY, an Indiana non-profit | ) |
| Corporation, | ) |
| JAMES M. DANKO, an individual, | ) |
| LEVESTER JOHNSON, an individual, | ) |
| STACIE COLSON PATTERSON, an individual, | ) |
| ANNE FLAHERTY, an individual, | ) |
| SALLY CLICK, an individual, | ) |
| ERIN McCLUNEY, an individual, | ) |
| ROBERT PADGETT, an individual, | ) |
| MARTHA DWIZLIK, an individual, and | ) |
| "JANE SMITH", an individual, | ) |
| | ) |
| Defendants. | ) |
| | |
| UNITRIN PREFERRED INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Intervening Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| "JANE SMITH," an individual and | ) |
| "JOHN DOE," an individual, | ) |
| | ) |
| Intervening Defendants. | ) |

<u>**DEFENDANT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT**</u>

Come now Defendant, Butler University ("Butler"), by counsel, and provide their answer to the amended complaint filed by Plaintiff John Doe as follows:[1]

<u>**THE PARTIES**</u>

1.      Plaintiff is an individual who resides in Miami, Florida and is otherwise *sui juris.*

**<u>ANSWER:</u>**     Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 1 of Plaintiff's Amended Complaint, and therefore denies the same.


2.      BUTLER UNIVERSITY is a non-profit corporation organized and operated under the laws of the State of Florida.

**<u>ANSWER:</u>**     Butler admits that it is a non for profit corporation, but denies the remaining allegations contained in paragraph 2 of Plaintiff's Amended Complaint.

3.      JAMES M. DANKO is an individual who, upon information and belief, resides in the State of Indiana and is otherwise *sui juris.* He is the President of BUTLER.

**<u>ANSWER:</u>**     Butler admits the allegations contained in paragraph 2 of Plaintiff's Amended Complaint.

4.      LEVESTER JOHNSON is an individual who, upon information and belief, resides in the State of Indiana and is otherwise *sui juris.*  He is the Vice-President for Student Affairs at BUTLER.

---

[1] Concurrent with the filing of this Answer, the individually named defendants, James M. Danko, Levester Johnson, Stacie Colson Patterson, Anne Flaherty, Sally Click, Erin McCluney, Robert Padgett, and Martha Dwizlik, have filed a motion to dismiss the claims asserted against them.

**ANSWER:**   Butler admits that at the time of the facts alleged by Plaintiff, Mr. Johnson resided in the State of Indiana, and served as Butler's Vice President for Student Affairs.

5.     STACIE COLSON PATTERSON[2] is an individual who, upon information and belief, resides in the State of Indiana and is otherwise *sui juris.*  She is the Title IX Coordinator for BUTLER.

**ANSWER:**   Butler admits that at the time of the facts alleged by Plaintiff, Ms. Colson Patterson Johnson resided in the State of Indiana, and served as Butler's Title IX coordinator.

6.     ANNE FLAHERTY is an individual who, upon information and belief, resides in the State of Indiana and is otherwise *sui juris.*  She was the non-voting chairperson of the Equity Grievance Panel which found Plaintiff in violation of school policy as set forth in greater detail below.

**ANSWER:**   Butler admits the allegations contained in paragraph 6 of Plaintiff's Amended Complaint.

7.     SALLY CLICK is an individual who, upon information and belief, resides in the State of Indiana and is otherwise *sui juris.*  She was one of the three (3) voting members of the Equity Grievance Panel which found Plaintiff in violation of school policy as set forth in greater detail below.

**ANSWER:**   Butler admits the allegations contained in paragraph 7 of Plaintiff's Amended Complaint.

---

[2] Ms. Colston Patterson's name is misspelled throughout the Complaint.

8.      ERIN McCLUNEY is an individual who, upon information and belief, resides in the State of Indiana and is otherwise *sui juris.* She was one of the three (3) voting members of the Equity Grievance Panel which found Plaintiff in violation of school policy as set forth in greater detail below.

**ANSWER:**   Butler admits the allegations contained in paragraph 8 of Plaintiff's Amended Complaint.

9.      ROBERT PADGETT is an individual who, upon information and belief, resides in the State of Indiana and is otherwise *sui juris.* He was one of the three (3) voting members of the Equity Grievance Panel which found Plaintiff in violation of school policy as set forth in greater detail below.

**ANSWER:**   Butler admits the allegations contained in paragraph 9 of Plaintiff's Amended Complaint.

10.     MARTHA DWIZLIK[3] is an individual who, upon information and belief, resides in the State of Indiana and is otherwise *sui juris.* She was the investigator for the Equity Grievance Panel which found Plaintiff in violation of school policy as set forth in greater detail below.

**ANSWER:**   Butler admits the allegations contained in paragraph 10 of Plaintiff's Amended Complaint.

11.     "JANE SMITH" is an individual who, upon information and belief, resides in the State of Indiana and is otherwise *sui juris.* At all times relevant hereto, she was and is a student at BUTLER who made the allegations in issue against Plaintiff.

---

[3] Ms. Dziwlik's last name is misspelled throughout this document.

4

**ANSWER:**   Butler admits the allegations contained in paragraph 11 of Plaintiff's Amended Complaint.

## JURISDICTIONAL ALLEGATIONS

12.   This Court has subject matter jurisdiction in this case on several grounds.

**ANSWER:**   Butler admits that this Court has jurisdiction over this matter.

13.   First, there are counts based on violations of federal statutes, specifically, 20 U.S.C. §1681 (also known as "Title IX") (discrimination based on sex) and 42 U.S.C. §1981 (discrimination based on race), giving the Court jurisdiction under 28 U.S.C. §1331 (jurisdiction arising under federal question).

**ANSWER:**   Butler admits this Court has subject matter jurisdiction over this matter.

14.   Alternatively, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (diversity jurisdiction) as there is complete diversity between the Plaintiff - a citizen of Florida - and the Defendants, who are all citizens of Indiana.

**ANSWER:**   Butler admits the allegations contained in paragraph 14 of Plaintiff's Amended Complaint.

15.   In addition to the federal claims brought in this action, Plaintiff has alleged several causes of action under Indiana law.  This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. §1367 as these claims are so related to the federal claims "that they form part of the same case or controversy under Article 11I of the United States Constitution."

**ANSWER:**   Butler admits the allegations contained in paragraph 15 of Plaintiff's Amended Complaint.

16.     This Court also has personal jurisdiction over all Defendants in that they reside and/or conduct business on a regular and ongoing basis in the State of Indiana and in the Southern District of Indiana.

**ANSWER:**     Butler admits the allegations contained in paragraph 16 of Plaintiff's Amended Complaint.

17.     Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. §1391(b)(1) because Defendants are subject to personal jurisdiction in this district and therefore "reside" in this district, as that term is defined in 28 U.S.C. §1391(c)(3).

**ANSWER:**     Butler admits the allegations contained in paragraph 17 of Plaintiff's Amended Complaint.

18.     Venue is also proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events that give rise to the claims asserted herein occurred in this district.

**ANSWER:**     Butler admits the allegations contained in paragraph 18 of Plaintiff's Amended Complaint.

19.     Finally, all conditions precedent to the filing and prosecution of this action have either been satisfied or waived.

**ANSWER:**     Paragraph 19 of Plaintiff's Amended Complaint sets forth legal conclusions for which no response is merited.  To the extent a response is merited, Butler denies the allegations contained in paragraph 19 of Plaintiff's Amended Complaint.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Events Leading to BUTLER'S Investigation

20.     Virtually all of the events upon which Plaintiff's Complaint is based occurred in the evening hours of April 18, 2015 and the early morning hours of April 19, 2015.

**ANSWER:**   Butler admits the allegations contained in paragraph 20 of Plaintiff's Amended Complaint.

21.     In the fall of 2014, Plaintiff enrolled as a freshman undergraduate at BUTLER.

**ANSWER:**   Butler admits the allegations contained in paragraph 21 of Plaintiff's Amended Complaint.

22.     During his first semester, he had an intimate (sexual) relationship with another BUTLER student, ANNALISE LARSON ("LARSON").

**ANSWER:**   Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 22 of Plaintiff's Amended Complaint, and therefore denies the same.

23.     Testimony was introduced at the grievance hearing that, during their relationship, all sexual activity between Plaintiff and LARSON was consensual, which supported Plaintiff's testimony that he was well-aware of BUTLER'S policy about sexual contact between students, and in particular, the requirement that such activity be consensual.

**ANSWER:**   Butler denies the allegations contained in paragraph 23 of Plaintiff's Amended Complaint.

24.     At approximately midnight on Saturday night, April 18, 2015, Plaintiff decided to attend a party at Delta Tau Delta Fraternity.  He went to the party with his roommate, MATTHEW GOFF ("GOFF"), and GOFF'S girlfriend, ALLIE RAMSEYER.

**ANSWER:**   Butler admits the allegations contained in paragraph 24 of Plaintiff's Amended Complaint.

25.   Plaintiff, along with GOFF and RAMSEYER, were among the first students to arrive at the party.

**ANSWER:**   Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 25 of Plaintiff's Amended Complaint, and therefore denies the same.

26.   Plaintiff consumed alcohol prior to going to the party, and also consumed alcohol at the party.  However, this consumption occurred over a period of many hours, and at no time on the night and morning in question was he intoxicated, either while attending the party or after he left the party with "JANE SMITH".

**ANSWER:**   Butler admits that Plaintiff consumed alcohol on the night in question, but is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 26 Plaintiff's Amended Complaint, and therefore denies the same.

27.   Shortly after arriving at the party, Plaintiff saw "JANE SMITH", who was with one of her friends, Riley Higgins.  He approached her and began talking with "JANE SMITH". Eventually, he asked her to dance, and they began dancing.

**ANSWER:**   Butler admits the allegations contained in paragraph 27 of Plaintiff's Amended Complaint.

28.   According to numerous witnesses who eventually testified at the grievance hearing, both for and against Plaintiff, he and "JANE SMITH" began to dance more intimately, and eventually started "making out" on the dance floor, in full view of all the other students attending the party.

**ANSWER:**   Butler admits the allegations contained in paragraph 28 of Plaintiff's Amended Complaint.

29.      There was an obvious attraction between Plaintiff and "JANE SMITH", and they decided to leave the party to go to his dormitory room.

**ANSWER:**   Butler admits that Plaintiff and Jane Smith left the party to go to a dormitory, but is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 29 of Plaintiff's Amended Complaint, and therefore denies the same.

30.      However, unbeknownst to Plaintiff, "JANE SMITH" had recently broken up with her boyfriend, and her girlfriends had decided amongst themselves that they would "watch out" for "JANE SMITH" during the party, to make sure she (1) did not drink to excess and/or (2) get involved with anyone she might meet at the party.

**ANSWER:**   Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 30 of Plaintiff's Amended Complaint, and therefore denies the same.

31.      These friends of "JANE SMITH", all of whom are women, acknowledge that they are a very tight-knit group of students; they even have a name for their clique, "The Shakin' Hams", and several of them testified in the grievance hearing that several of them knew each other (through other family members) even before attending BUTLER.

**ANSWER:**   Butler admits that Jane Smith had a tight-knit group of friends, all of which were female students, and that they had a name for their clique, "The Shakin' Hams," but denies the remaining allegations contained in paragraph 31 of Plaintiff's Amended Complaint.

32.     In other words, "JANE SMITH'S" friends were (according to them) trying to protect a friend from "making a mistake" while she was "vulnerable".

**ANSWER:**    Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 32 of Plaintiff's Amended Complaint, and therefore denies the same.

33.     Of course, what these "friends" failed or refused to recognize was that "JANE SMITH" was a free actor, an adult over the age of consent, who had the absolute right to make her own decisions that evening, including whether or not she wanted to be with Plaintiff, and to what extent she wished to become intimate with him.

**ANSWER:**    Paragraph 33 of Plaintiff's Amended Complaint sets forth legal conclusions for which no response is merited.  To the extent a response is merited, Butler denies the allegations contained in paragraph 33 of Plaintiff's Amended Complaint.

34.     On at least two (2) occasions during the subject party, Plaintiff and "JANE SMITH" attempted to leave the party, but were confronted and prevented from leaving by one or more of "JANE SMITH'S" friends.

**ANSWER:**    Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 34 of Plaintiff's Amended Complaint, and therefore denies the same.

35.     Eventually, "JANE SMITH", without any assistance or inducement from Plaintiff, concocted a plan by which the two of them could be alone.  The plan consisted of the following: "JANE SMITH" would indicate to her friends that she was tired and wanted to go back to her room at her dormitory, Schwitzer Hall; Plaintiff would agree to walk her back to her room to make sure she got there safely; once at Schwitzer Hall, "JANE SMITH" would take a photograph of

herself in her room and send it to her friends to assure them that she had gotten home safely, when in fact they ("JANE SMITH" and Plaintiff) would be together at Plaintiff's room in another dormitory, Ross Hall.

**ANSWER:**     Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 34 of Plaintiff's Amended Complaint, and therefore denies the same.

36.     This plan, revealed by "JANE SMITH" to Plaintiff, reasonably led Plaintiff to believe that "JANE SMITH" wanted to be alone with him (other behavior by "JANE SMITH" which occurred later, to be described below, would reasonably indicate to Plaintiff that not only did "JANE SMITH" want to be alone with him but that she was and did in fact consent to sexual activity with him).

**ANSWER:**     Butler denies the allegations contained in paragraph 36 of Plaintiff's Amended Complaint.

37.     At approximately 2:00 A.M. on Sunday, April 19, 2015, "JANE SMITH" and Plaintiff left the party, and proceeded to Schwitzer Hall, "JANE SMITH'S" dormitory.

**ANSWER:**     Butler admits the allegations contained in paragraph 37 of Plaintiff's Amended Complaint.

38.     Once there, Plaintiff waited outside her room; "JANE SMITH" came out of her room within a few moments, and the couple proceeded to walk over to Plaintiff's dormitory, Ross Hall.

**ANSWER:**     Butler admits that Plaintiff waited outside of Jane Smith's room, and that Plaintiff and Jane Smith eventually walked to Plaintiff's dormitory, but denies the remaining allegations contained in paragraph 38 of Plaintiff's Amended Complaint.

39.     While en route to their destination, "JANE SMITH" and Plaintiff were approached by one of "JANE SMITH'S" friends, (Mary) Kate Richards, who wanted to know why they were going to Plaintiff's dormitory.  During this conversation, "JANE SMITH" acknowledged that she was going to his (Plaintiff's) room consensually, and at no time did "JANE SMITH" indicate to her friend, either by word or action, that she did not wish to go with Plaintiff.

**ANSWER:**     Butler admits that Plaintiff promised Ms. Richards that he was going to accompany Jane Smith to her room at Schwitzer Hall and leave her there, and that he would  return to Ross Hall by himself, but denies the remaining allegations contained in paragraph 39 of Plaintiff's Amended Complaint.

40.     At that point, "JANE SMITH'S" friend left, and "JANE SMITH" and Plaintiff continued on to Plaintiff's room.

**ANSWER:**     Butler admits the allegations contained in paragraph 40 of Plaintiff's Amended Complaint.

41.     Once inside the room, "JANE SMITH" and Plaintiff began taking off each other's clothing, and then engaged in sexual contact — oral contact at first, then intercourse.

**ANSWER:**     Butler admits that Plaintiff and Jane Smith engaged in sexual contact, which included oral sex and intercourse, but denies the remaining allegations contained in paragraph 41 of Plaintiff's Amended Complaint.

42.     Throughout this period, "JANE SMITH" was indicating to Plaintiff by her actions that she was consenting to the sexual activity.

**ANSWER:**     Butler denies the allegations contained in paragraph 42 of Plaintiff's Amended Complaint.

43.    Shortly after intercourse began, "JANE SMITH" stated that "it hurt", and requested that Plaintiff stop, which he did, **immediately.**

**ANSWER:**    Butler admits that Jane Smith told Plaintiff during intercourse that it hurt, and asked Plaintiff to stop, but denies the remaining allegations contained in paragraph 43 of Plaintiff's Amended Complaint.

44.    There was no further sexual contact between them, and shortly thereafter, one of "JANE SMITH'S" friends, Ms. Loughman, knocked on the room door.

**ANSWER:**    Butler admits that Ms. Loughmn knocked on Plaintiff's room door, but denies the remaining allegations contained in paragraph 44 of Plaintiff's Amended Complaint.

45.    Plaintiff opened the door, whereupon the friend (Loughman) saw "JANE SMITH" unclothed, and demanded to know why she ("JANE SMITH") had lied to her about going back to the dormitory.

**ANSWER:**    Butler admits the allegations contained in paragraph 45 of Plaintiff's Amended Complaint.

46.    "JANE SMITH", obviously humiliated and embarrassed, then told her friend that she has been sexually assaulted by Plaintiff.

**ANSWER:**    Butler admits that Plaintiff told Ms. Loughmn that she had seen sexually assaulted, but denies the remaining allegations contained in paragraph 46 of Plaintiff's Amended Complaint.

**BUTLER'S Investigation Begins**

47.    BUTLER'S investigation began on or about April 20, 2015, approximately one to one and one-half days after the incident occurred.

13

**ANSWER:**   Butler denies the allegations contained in paragraph 47 of Plaintiff's Amended Complaint.

48.      Upon information and belief, before the investigation began, "JANE SMITH'S" father, "BILL SMITH", met with either the President of BUTLER (DANKO) or a Vice-President, and demanded that Plaintiff be dismissed from BUTLER, notwithstanding the fact that he (Plaintiff) had certain due process rights and that the university had not even determined if, in fact, any violation of school policy had occurred.

**ANSWER:**   Butler admits that Jane Smith's father met with a Butler vice president, denies that Jane Smith's father met with Butler's president, and is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 48 of Plaintiff's Amended Complaint, and therefore denies the same.

49.      This intense pressure from "JANE SMITH'S" father colored BUTLER'S entire investigation, including but not limited to BUTLER'S chief investigator, DWIZLIK, and Detective Diane Sweeney of the BUTLER Police Department, who assisted DWIZLIK with the investigation, being predisposed to believe that Plaintiff had, in fact, sexually assaulted "JANE SMITH".

**ANSWER:**   Butler denies the allegations contained in paragraph 49 of Plaintiff's Amended Complaint.

50.      Upon information and belief, at the same time that BUTLER was conducting its investigation, Marion County prosecutors began an independent investigation into whether a criminal sexual assault had occurred - yet at no time does it appear that the two (2) investigations coordinated with each other, except for a single conference between Detective Sweeney and

Kimberly Rasheed an assistant district attorney with the Marion County Prosecutor's Office, after which it was determined that **no criminal charges would be filed against Plaintiff.**

**ANSWER:**   Butler admits that its police department conducted an investigation into the allegations made by Jane Smith, that Detective Sweeney and Kimberly Rasheed corresponded regarding Butler's investigation, and that the Marion County Prosecutor's Office did not file charges against Plaintiff, but denies the remaining allegations contained in paragraph 50 of Plaintiff's Amended Complaint.

51.    Although Plaintiff did not have access to DWIZLIK'S investigative report, both he and "JANE SMITH" were interviewed by her, and DWIZLIK acknowledged being told by "JANE SMITH" that she ("JANE SMITH") allowed Plaintiff to undress her while they were in his dormitory room without any objection, an action clearly indicating consent.

**ANSWER:**   Butler admits the Jane Smith told Ms. Dziwlik that Plaintiff took off her clothes while she was very intoxicated, but denies the remaining allegations contained in paragraph 51 of Plaintiff's Amended Complaint.

52.    DWIZLIK completed her report and submitted it to PATTERSON.  That report, dated May 8, 2015, was heavily redacted and was not turned over to Plaintiff or his counsel until after the grievance hearing took place 6 days later.

**ANSWER:**   Butler admits that the copy of the May 8, 2015 report provided to Plaintiff had redactions to comply with Family Education Rights and Privacy Act ("FERPA"), but denies the remaining allegations contained in paragraph 52 of Plaintiff's Amended Complaint.

53.    Plaintiff, to his credit, fully cooperated with both BUTLER'S investigation and Marion County's investigation.  He gave a voluntary statement to Detective Sweeney in which he freely and fully acknowledged that he had engaged in consensual sexual activity with "JANE

SMITH", despite her later comments to the contrary.  There were no questions posed by Detective Sweeney that Plaintiff refused to answer, and at no time did he invoke his constitutional rights against self-incrimination, either during that interview or during the grievance hearing.

**ANSWER:**   Butler admits that Plaintiff cooperated with its investigation, including providing a statement in which he contended that he had engaged in consensual sexual activity with Jane Smith despite her later comments to the contrary, and that at no time did Plaintiff invoke his constitutional rights against self-incrimination, but denies that the Marion County Prosecutor's Office conducted its own criminal investigation.

54.     On April 30, 2015, Plaintiff was notified by email (from PATTERSON) that the information provided to her by DWIZLIK was "sufficient to support a possible policy violation."

**ANSWER:**   Butler admits the allegations contained in paragraph 54 of Plaintiff's Amended Complaint.

55.     Plaintiff was then notified that the grievance hearing would be conducted on May 14, 2015. Although he was advised of his right to provide the Panel with the names of witnesses that he wished to call on his behalf, he was not provided with a copy of the investigator's (DWIZLIK'S) investigative report (as noted above) prior to the hearing, nor did he know the names and identities of witnesses being called by "JANE SMITH" - or by BUTLER on her behalf - until after the Grievance Hearing had begun.

**ANSWER:**  Butler admits that Plaintiff was notified that the grievance hearing would be conducted on May 14, 2015, and that he was advised of his right to provide the Panel with the names of witnesses that he wished to call, but denies the remaining allegations contained in paragraph 55 of Plaintiff's Amended Complaint.

**The Grievance Hearing**

56.     During the grievance hearing, an opaque wood panel, approximately eight feet in height, was placed between the table at which Plaintiff sat (with his counsel and student advisor) and the table at which "JANE SMITH" sat (with her advisor, her father).  At no time during the hearing was "JANE SMITH" visible to either Plaintiff or his counsel.

**ANSWER:**   Butler admits the allegations contained in paragraph 56 of Plaintiff's Amended Complaint.

57.     At no time during the hearing was Plaintiff or his attorney allowed to directly question any witness; he was only allowed to submit potential questions to the Panel Chair (FLAHERTY), who decided which questions would be read to the witnesses (she herself read questions which she had approved).  Not all of the questions submitted by Plaintiff's counsel were approved by FLAHERTY, and thus counsel's ability to question witnesses was further limited.

**ANSWER:**   Per university policy, Butler admits the allegations contained in paragraph 57 of Plaintiff's Amended Complaint.

58.     Throughout the hearing, and in particular during Panel member CLICK'S direct questioning of Plaintiff, it was obvious that Plaintiff was being forced by the Panel to demonstrate his innocence (by proving the sexual encounter with "JANE SMITH" was consensual) rather than requiring his accusers - BUTLER and "JANE SMITH" - to prove that he had in fact violated the school's Policy.

**ANSWER:**   Butler denies the allegations contained in paragraph 58 of Plaintiff's Amended Complaint.

59.     By shifting the burden of proof, BUTLER denied Plaintiff basic rights of due process as guaranteed him under both federal and Indiana state law.

17

**ANSWER:**   Butler denies the allegations contained in paragraph 59 of Plaintiff's Amended Complaint.

60.     At the conclusion of the hearing, the voting members of the Panel caucused, and submitted a short written report containing their findings and their recommendation.

**ANSWER:**   Butler denies the allegations contained in paragraph 60 of Plaintiff's Amended Complaint.

61.     In a letter dated May 18, 2015, sent by PATTERSON, Plaintiff was informed of the Panel's decision and recommendation: by a "preponderance of the evidence", the panel found him in violation of the school's Civil Rights Equity Grievance Policy," and recommended that he be "dismissed from Butler University immediately."

**ANSWER:**   Butler admits the allegations contained in paragraph 61 of Plaintiff's Amended Complaint.

62.     BUTLER'S policy provided for a severely limited appeal to be filed within three (3) days from the date of the letter.

**ANSWER:**   Butler admits that Plaintiff had three days to appeal the adverse ruling, but denies the remaining allegations contained in paragraph 62 of Plaintiff's Amended Complaint.

63.     On May 21, 2015, Plaintiff timely served his appeal, which by school policy was primarily limited to raising procedural errors only.

**ANSWER:**   Butler admits that on May 21, 2015, Plaintiff filed an appeal in which he raised, among other grounds, procedural errors.

64.     As his first grounds for appeal, Plaintiff pointed out that the Policy sets forth the rights of the accused, among which are "[t]o be informed of the outcome/resolution of the complaint **and the rationale for the outcome, in writing."**  *(Emphasis added).*  However, the Panel's decision, as conveyed to him by PATTERSON, only stated the Panel's decision and recommended punishment; nothing else was provided in writing, thereby severely restricting Plaintiff's ability to determine if one or more members of the Panel demonstrated bias in that report, which would constitute "a procedural error...that significantly impacted the outcome of the hearing", one of the bases set forth in the Policy as grounds for appeal.

**ANSWER:**     Plaintiff accurately quotes his appeal letter dated May 21, 2015, the procedural grounds for an appeal. Otherwise, the remainder of paragraph 65 contains legal conclusions for which no response is merited.  To the extent a response is merited, Butler denies the remaining allegations contained in paragraph 64 of Plaintiff's Amended Complaint.

65.     This violation of the Policy was "remedied" by PATTERSON by providing the written report of the Panel (referred to above) to Plaintiff **after** his appeal had already been submitted.

**ANSWER:**     Butler denies the allegations contained in paragraph 65 of Plaintiff's Amended Complaint.

66.     As his second procedural grounds for his appeal, Plaintiff pointed out that one of the Panel members (CLICK), through her questioning of Plaintiff at the hearing, demonstrated her misunderstanding of what constitutes proof of consent as that term is defined under BUTLER'S Policy, thereby subjecting Plaintiff to a completely improper burden of proof (as well as shifting the burden of proof on that critical issue to him).

**ANSWER:**   Plaintiff accurately cites to his appeal letter dated May 21, 2015 regarding the procedural grounds for an appeal. Otherwise, Butler denies the remaining allegations contained in paragraph 66 of Plaintiff's Amended Complaint.

67.   PATTERSON dismissed this grounds for appeal as raising "non-procedural" error.

**ANSWER:**   Butler admits the allegations contained in paragraph 67 of Plaintiff's Amended Complaint.

68.   Plaintiff's third procedural grounds for appeal were related to the second grounds, as he asserted that CLICK'S obvious misunderstanding and/or misapplication of the provisions of BUTLER'S Policy demonstrated a personal bias on her part as well, which clearly would constitute grounds for appeal.

**ANSWER:**   Plaintiff accurately cites to his appeal letter dated May 21, 2015, regarding the procedural grounds for an appeal. Otherwise, Butler denies the remaining allegations contained in paragraph 68 of Plaintiff's Amended Complaint.

69.   Again, PATTERSON dismissed this grounds for appeal as raising "non-procedural error".

**ANSWER:**   Butler admits the allegations contained in paragraph 69 of Plaintiff's Amended Complaint.

70.   Plaintiff's last grounds for appeal was that newly discovered evidence existed which was relevant to the Panel, *i.e.,* that the parallel investigation by the Marion County Prosecutor's Office resulted in no criminal charges being filed against him.

**ANSWER:**   Plaintiff accurately cites to his appeal letter dated May 21, 2015 regarding his procedural grounds for an appeal. Otherwise, Butler admits that no charges were filed against Plaintiff, and denies that the Marion County Prosecutor's Office conducted a parallel investigation.

71.     In response, PATTERSON dismissed the evidence as being irrelevant because of the different standards of proof in administrative proceedings and criminal proceedings.  She also noted that Plaintiff "could have called either Detective Sweeney and/or Assistant Prosecutor Rasheed as witnesses, and therefore, there was no "newly discovered evidence."

**ANSWER:**   Plaintiff accurately cites to Ms. Colson Patterson's June 4, 2015 letter dismissing Plaintiff's appeal.

72.     PATTERSON'S response completely ignored the fact, as stated above, that the prosecutor's decision **not** to charge Plaintiff criminally did not come until **after** the Grievance hearing had already taken place.

**ANSWER:**   Butler denies the allegations contained in paragraph 72 of Plaintiff's Amended Complaint.

73.     Thus, taken as a whole, BUTLER"S response to Plaintiff's appeal shows more desire to uphold the decision to expel him rather than to afford him due process—in short, it appears that BUTLER'S consideration of Plaintiff's appeal was *pro forma.*

**ANSWER:**   Butler denies the allegations contained in paragraph 73 of Plaintiff's Amended Complaint.

**Aftermath**

74.     After being expelled from BUTLER, Plaintiff made applications to several colleges and universities to begin a new academic career elsewhere - eight in all.

**ANSWER:**   Butler admits that Plaintiff applied for admittance at other universities, but is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 74 of Plaintiff's Amended Complaint, and therefore denies the same.

75.    He was rejected from the first seven schools to which he applied - not because he did not qualify academically, but rather because the schools asked about the circumstances surrounding his dismissal from BUTLER.

**ANSWER:**    Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 75 of Plaintiff's Amended Complaint, and therefore denies the same.

76.    Plaintiff answers those inquiries fully and truthfully - although continuing to assert his innocence at all times.

**ANSWER:**    Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 76 of Plaintiff's Amended Complaint, and therefore denies the same.

77.    The schools did not care: his applications were summarily rejected once the events at BUTLER were revealed.

**ANSWER:**    Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 77 of Plaintiff's Amended Complaint, and therefore denies the same.

78.    Plaintiff became despondent and withdrawn; he also manifested physical signs of depression, including insomnia and loss of appetite.

**ANSWER:**    Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 78 of Plaintiff's Amended Complaint, and therefore denies the same.

79.    He also was under the care of a licensed health professional, although that has now stopped, at least temporarily.

22

**ANSWER:**   Butler is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 79 of Plaintiff's Amended Complaint, and therefore denies the same.

80.   Finally, as indicated above, *see supra,* pg. 6, n. 4, shortly before this Complaint was filed, Plaintiff was accepted by St. Louis University in St. Louis, Missouri.  However, as noted above, there is a **significant** difference in the academic quality of the schools: according to the 2015 U.S. News and World Report's rankings of America's best colleges, Butler ranked #2 among "Midwest Universities", whereas St. Louis University was only tied for #199 among "National Universities".

**ANSWER:**   Butler admits that in a 2015 edition of a U.S. News and World Report's rankings of America's best colleges, Butler ranked second among "Midwest Universities," and St. Louis University ranked 199 among "National Universities," but is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 80 of Plaintiff's Amended Complaint, and therefore denies the same.

81.   Plaintiff has had to retain the services of ANDREW M. KASSIER, P.A. in order to file and prosecute this complaint, and he is obligated to pay them a reasonable fee for their services.

**ANSWER:**   Butler admits that Mr. Kassier is counsel of record for Plaintiff in this matter, but is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 80 of Plaintiff's Amended Complaint, and therefore denies the same.

## COUNT I.
## BREACH OF CONTRACT
### (Against BUTLER)

82.     Plaintiff realleges and re-avers the jurisdictional and common allegations contained in paragraphs 1 through 81 above as though specifically pled in this count.

**ANSWER:**     Butler hereby incorporates its responses to paragraphs 1-81 of the Amended Complaint herein.

83.     Plaintiff had a contractual relationship with BUTLER, pursuant to which he was promised an undergraduate education, culminating in the award of a degree, provided he met all academic standards of BUTLER and remained a student in good standing.

**ANSWER:**     Paragraph 83 of Plaintiff's Amended Complaint sets forth legal conclusions for which no response is merited.  To the extent a response is merited, Butler denies the allegations contained in paragraph 83 of Plaintiff's Amended Complaint.

84.     Pursuant to that contractual relationship, both Plaintiff and BUTLER agreed to abide by the terms of the Policy (Exhibit "A"), which imposed certain obligations on each of them, including but not limited to a well-defined protocol for BUTLER to follow in the event that one of its students was accused of sexual misconduct involving another BUTLER student.

**ANSWER:**     Paragraph 84 of Plaintiff's Amended Complaint sets forth legal conclusions for which no response is merited.  To the extent a response is merited, Butler denies the allegations contained in paragraph 84 of Plaintiff's Amended Complaint.

85.     That Policy, at least in theory, was designed to afford an accused student due process in the investigation and prosecution of allegations of sexual misconduct.

**ANSWER:**     Paragraph 85 of Plaintiff's Amended Complaint sets forth legal conclusions for which no response is merited.  To the extent a response is merited, Butler denies the allegations contained in paragraph 85 of Plaintiff's Amended Complaint.

86.     However, as set out with greater specificity above, BUTLER failed to comply with its Policy, and in so doing, breached its obligations under its contract with Plaintiff, by failing to conduct a fair and unbiased investigation and prosecution of the allegations made by "JANE SMITH" against Plaintiff because of his gender and race.

**ANSWER:**     Butler denies the allegations contained in paragraph 86 of Plaintiff's Amended Complaint.

87.     Plaintiff fulfilled his obligations under the parties' contract, or was excused from compliance with same by BUTLER'S breach of its obligations thereunder.

**ANSWER:**     Butler denies the allegations contained in paragraph 87 of Plaintiff's Amended Complaint.

88.     As the direct result of BUTLER'S breach of contract, Plaintiff has suffered injury and incurred compensable damages, and will continue to suffer such injury and damages in the future.

**ANSWER:**     Butler denies the allegations contained in paragraph 88 of Plaintiff's Amended Complaint.

**COUNT II.**
**BREACH OF COVENANT OF GOOD FAITH**
**AND FAIR DEALING**
**(Against BUTLER)**

89.     Plaintiff realleges and re-avers the jurisdictional and common allegations contained in paragraphs 1 through 81 above as though specifically pled in this count.

**ANSWER:**     Butler hereby incorporates its responses to paragraphs 1-81 of the Amended Complaint herein.

90.     Pursuant to Indiana law, the contract between Plaintiff and BUTLER contained an implied covenant of good faith and fair dealing.

**ANSWER:**     Paragraph 90 of Plaintiff's Amended Complaint sets forth legal conclusions for which no response is merited.  To the extent a response is merited, Butler denies the allegations contained in paragraph 90 of Plaintiff's Amended Complaint.

91.     BUTLER breached its duty and obligation of good faith and fair dealing in its investigation and prosecution of "JANE SMITH'S" allegations against Plaintiff, in its decision-making process, its ultimate imposition of sanctions against Plaintiff, and its refusal to consider newly-discovered evidence which would have served to exonerate Plaintiff.

**ANSWER:**     Butler denies the allegations contained in paragraph 91 of Plaintiff's Amended Complaint.

92.     As the direct and proximate result of BUTLER'S breach of the covenant of good faith and fair dealing, Plaintiff has suffered damages and will continue to suffer such damages in the future.

**ANSWER:**     Butler denies the allegations contained in paragraph 92 of Plaintiff's Amended Complaint.

26

## COUNT III.
## <u>TORTIOUS INTERFERENCE WITH CONTRACT</u>
### (Against All Individual Defendants)

93.     Plaintiff realleges and re-avers the jurisdictional and common allegations contained in paragraphs 1 through 81 above as though specifically pled in this count.

**<u>ANSWER</u>:**     Butler hereby incorporates its responses to paragraphs 1-81 of the Amended Complaint herein.

94.     All of the individual Defendants were aware of the contractual relationship between Plaintiff and BUTLER as set forth with greater specificity above, including but not limited to the procedures and protocols set forth in "the Policy."

**<u>ANSWER</u>:**     Butler denies the allegations contained in paragraph 94 of Plaintiff's Amended Complaint.

95.     The individual Defendants intentionally and maliciously interfered with Plaintiff's contractual relationship with BUTLER as set forth above, including but not limited to their failure to insure that BUTLER'S disciplinary process was fair, unbiased, and non-discriminatory to Plaintiff, and/or by denying Plaintiff a fair disciplinary hearing by their actions and/or testimony during those proceedings.

**<u>ANSWER</u>:**     Butler denies the allegations contained in paragraph 94 of Plaintiff's Amended Complaint.

96.     As the direct and proximate result of the actions of the individual Defendants, Plaintiff suffered injury, to-wit: BUTLER'S termination of its contractual relationship with him, and Plaintiff will continue to suffer such injury in the future.

**<u>ANSWER</u>:**     Butler denies the allegations contained in paragraph 96 of Plaintiff's Amended Complaint.

**COUNT IV.**
**(VIOLATION OF 20 U.S.C. §1681) (TITLE IX)**
**(Against All Defendants)**

97.     Plaintiff realleges and re-avers the jurisdictional and common allegations contained in paragraphs 1 through 81 above as though specifically pled in this count.

**ANSWER:**     Butler hereby incorporates its responses to paragraphs 1-81 of the Amended Complaint herein.

98.     Plaintiff has a right, pursuant to title IX of the federal Education Amendments of 1972, to not be subjected to discipline by a university (in this case, BUTLER), where sex is a motivating factor in the decision to enforce the school's Policy and to impose sanctions.

**ANSWER:**     Paragraph 98 of Plaintiff's Amended Complaint sets forth a legal conclusion for which no response is merited.  To the extent a response is merited, Butler admits Plaintiff has a right to be free from discrimination under Title IX.

99.     Title IX further requires that federally-funded colleges and university, which BUTLER is, must adopt and follow grievance procedures that provide for "prompt and equitable" resolution of Title IX complaints, as set forth with specificity at 34 C.F.R. §106.8(b).

**ANSWER:**     Paragraph 98 of Plaintiff's Amended Complaint sets forth a legal conclusion for which no response is merited.  To the extent a response is merited, Butler admits the allegations contained in paragraph 99 of Plaintiff's Amended Complaint.

100.     The United States Department of Education, at least as far back as April, 2011, that such "prompt and equitable" procedures must provide, at a minimum, certain specific protections, including "[a]dequate, reliable, and impartial investigation of complaints, including the opportunity for both parties to present witnesses and other evidence."  The Department of Education also advised that throughout the pendency of such an investigation, up to and including

28

the hearing, "the parties must have an equal opportunity to present relevant witnesses and other evidence."

**ANSWER:**   Paragraph 100 of Plaintiff's Amended Complaint sets forth a legal conclusion for which no response is merited.  To the extent a response is merited, Butler admits the allegations contained in paragraph 100 of Plaintiff's Amended Complaint.

101.    As described with greater specificity above, BUTLER violated Plaintiff's Title IX rights when it failed to provide "equitable" procedures to Plaintiff and selectively enforced provisions of "the Policy" against him, in violation of federal law, *i.e.,* Title IX, in spite of evidence that (1) the allegations against him were not credible and (2) unrebutted evidence that the sexual activity between Plaintiff and "JANE SMITH" was, in fact, consensual.

**ANSWER:**   Butler denies the allegations contained in paragraph 101 of Plaintiff's Amended Complaint.

102.    BUTLER further violated Plaintiff's Title IX rights as it appears no investigation whatsoever was done by BUTLER into whether "JANE SMITH", Plaintiff's accuser, and/or her friends, had themselves violated "the Policy" by, *inter alia,* making false and malicious allegations against Plaintiff regarding his sexual activity with "JANE SMITH".

**ANSWER:**   Butler denies the allegations contained in paragraph 102 of Plaintiff's Amended Complaint.

103.    Even after Plaintiff presented (and attempted to present, in his appeal) exculpatory evidence, BUTLER refused to re-open the investigation, or even to re-consider the sanctions imposed against Plaintiff.

**ANSWER:**   Butler denies the allegations contained in paragraph 103 of Plaintiff's Amended Complaint.

104.    BUTLER failed to remediate, in any way, its discriminatory actions against Plaintiff.

**ANSWER:**   Butler denies the allegations contained in paragraph 104 of Plaintiff's Amended Complaint.

105.    As the direct and proximate result of the actions of BUTLER, Plaintiff has suffered damages, and will continue to suffer such damages in the future.

**ANSWER:**   Butler denies the allegations contained in paragraph 105 of Plaintiff's Amended Complaint.

## COUNT V.
## VIOLATION OF 42 U.S.C. §1981
### (Against All Defendants)

106.    Plaintiff realleges and re-avers the jurisdictional and common allegations contained in paragraphs 1 through 81 above as though specifically pled in this count.

**ANSWER:**   Butler hereby incorporates its responses to paragraphs 1-81 of the Amended Complaint herein.

107.    Pursuant to the federal Civil Rights Act, 42 U.S.C. §1981, Plaintiff has a right to enjoy all of the benefits, privileges, and protections of his contractual relationship with BUTLER without fear of discrimination being exerted or utilized by BUTLER based on his race and/or ethnic origin.

**ANSWER:**   Paragraph 107 of Plaintiff's Amended Complaint sets forth a legal conclusion for which no response is merited.  To the extent a response is merited, Butler admits the allegations contained in paragraph 107 of Plaintiff's Amended Complaint.

108.    As noted above, Plaintiff is Hispanic, whereas "JANE SMITH" (his primary accuser), the other BUTLER students who testified favorably to her, the investigator assigned by BUTLER to the subject complaint, the entire panel who presided over the disciplinary proceedings against Plaintiff, and the other BUTLER personnel named as individual Defendants herein are all non-Hispanic.

**ANSWER:**   Butler admits the allegations contained in paragraph 108 of Plaintiff's Amended Complaint.

109.    BUTLER, with the assistance and participation of the individual Defendants, discriminated against Plaintiff, a Hispanic male from Miami, Florida, on the basis of race and/or ethnic origin through its discriminatory enforcement of, and/or performance under, "the Policy", specifically, by the manner in which it handled "JANE SMITH'S" complaint, through and including the disciplinary hearing, and its treatment of Plaintiff after the hearing.

**ANSWER:**    Butler denies the allegations contained in paragraph 109 of Plaintiff's Amended Complaint.

110.    BUTLER also discriminated against Plaintiff through its failure to properly investigate whether "JANE SMITH" had violated "the Policy" through her false and malicious accusations against Plaintiff.

**ANSWER:**    Butler denies the allegations contained in paragraph 110 of Plaintiff's Amended Complaint.

111.    As with its violation of Title IX, as set forth with specificity in the preceding count, BUTLER has failed to remediate its discriminatory actions against Plaintiff as alleged in this count.

**ANSWER:**    Butler denies the allegations contained in paragraph 111 of Plaintiff's Amended Complaint.

112.     As the direct and proximate result of the actions of BUTLER, Plaintiff has suffered damages, and will continue to suffer such damages in the future.

**ANSWER:**   Butler denies the allegations contained in paragraph 112 of Plaintiff's Amended Complaint.

### COUNT VI.
### DEFAMATION
### (Against BUTLER)

113.     Plaintiff realleges and re-avers the jurisdictional and common allegations contained in paragraphs 1 through 81 above as though specifically pled in this count.

**ANSWER:**   Butler hereby incorporates its responses to paragraphs 1-81 of the Amended Complaint herein.

114.     Following the conclusion of the disciplinary proceedings described herein, upon information and belief, BUTLER published and made available to third parties the findings and recommendations of the disciplinary panel finding that Plaintiff had violated "the Policy" by engaging in non-consensual sexual activity with "JANE SMITH".

**ANSWER:**   Butler admits that information from its findings and recommendations of the disciplinary panel were made available only to educational institutions specifically authorized and identified by Plaintiff, but denies the remaining allegations contained in paragraph 114 of Plaintiff's Amended Complaint.

115.     The statements made in said publication were knowingly false and defamatory, and held Plaintiff up to ridicule and scorn in the BUTLER community.

**ANSWER:**   Butler denies the allegations contained in paragraph 116 of Plaintiff's Amended Complaint.

116.     Additionally, BUTLER marked Plaintiff's permanent record with the statement "Dismissed permanently from the University", and those records have been disseminated to other colleges and universities by BUTLER.

**ANSWER:**     Butler admits that, pursuant to Plaintiff's permission, when it received inquiries by other universities for which Plaintiff sought admission, it stated that Plaintiff is no longer eligible to return to Butler.

117.     BUTLER'S reliance on its flawed and discriminatory investigatory and disciplinary process as a basis for publishing the defamatory statements was done with knowing or reckless disregard of the truth.

**ANSWER:**     Butler denies the allegations contained in paragraph 117 of Plaintiff's Amended Complaint.

118.     As the direct and proximate result of the actions of BUTLER, Plaintiff has suffered damages, and will continue to suffer such damages in the future.

**ANSWER:**     Butler denies the allegations contained in paragraph 119 of Plaintiff's Amended Complaint.

**COUNT VII.**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against All Defendants)**

119.     Plaintiff realleges and re-avers the jurisdictional and common allegations contained in paragraphs 1 through 81 above as though specifically pled in this count.

**ANSWER:**     Butler hereby incorporates its responses to paragraphs 1-81 of the Amended Complaint herein.

120.     The conduct of Defendants, as described with greater specificity above, was extreme, outrageous, and beyond the scope of common decency and was intended to cause Plaintiff severe emotional distress.

**ANSWER:**     Butler denies the allegations contained in paragraph 120 of Plaintiff's Amended Complaint.

### COUNT VII.

121.     The actions of Defendants not only caused Plaintiff to suffer emotional distress, but also resulted in actual physical injury to Plaintiff; as stated with greater specificity above.

**ANSWER:**     Butler hereby incorporates its responses to paragraphs 1-120 of the Amended Complaint herein.

122.     As the direct and proximate result of the actions of Defendants, Plaintiff has suffered damages, and will continue to suffer such damages in the future.

**ANSWER:**     Butler denies the allegations contained in paragraph 122 of Plaintiff's Amended Complaint.

### COUNT VIII.
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

123.     Plaintiff realleges and re-avers the jurisdictional and common allegations contained in paragraphs 1 through 81 above as though specifically pled in this count.

**ANSWER:**     Butler hereby incorporates its responses to paragraphs 1-81 of the Amended Complaint herein.

124.     Each and every Defendant owed a duty to Plaintiff to not make false and malicious allegations of sexual misconduct against him and/or to not participate in the disciplinary proceedings for the purpose of furthering the dissemination of those allegations.

34

**ANSWER:**   Butler denies the allegations contained in paragraph 124 of Plaintiff's Amended Complaint.

125.    The conduct of Defendants, as described with greater specificity above, was extreme, outrageous, and beyond the scope of common decency and was intended to cause Plaintiff severe emotional distress.

**ANSWER:**   Butler denies the allegations contained in paragraph 123 of Plaintiff's Amended Complaint.

126.    The actions of Defendants not only caused Plaintiff to suffer emotional distress, but also resulted in actual physical injury to Plaintiff, as stated with greater specificity above.

**ANSWER:**   Butler denies the allegations contained in paragraph 126 of Plaintiff's Amended Complaint.

127.    As the direct and proximate result of the actions of Defendants, Plaintiff has suffered damages, and will continue to suffer such damages in the future.

**ANSWER:**   Butler denies the allegations contained in paragraph 127 of Plaintiff's Amended Complaint.

### COUNT IX: PRELIMINARY AND PERMANENT INJUNCTION
### (Against BUTLER)

128.    Plaintiff realleges and re-avers the jurisdictional and common allegations contained in paragraphs 1 through 81 above as though specifically pled in this count.

**ANSWER:**   Butler hereby incorporates its responses to paragraphs 1-81 of the Amended Complaint herein.

129.    BUTLER'S action of permanently dismissing Plaintiff from the university has had a continuing effect upon Plaintiff to the present day.

**ANSWER:**   Butler denies the allegations contained in paragraph 129 of Plaintiff's Amended Complaint.

130.   There exists a strong likelihood of irreparable harm if BUTLER'S ongoing conduct is not enjoined, specifically, its maintaining of student records reflecting that Plaintiff was permanently dismissed from the university, and disseminating that information to any and all third parties requesting to view, or be provided with copies of, Plaintiffs permanent student records.

**ANSWER:**   Butler denies the allegations contained in paragraph 130 of Plaintiff's Amended Complaint.

131.   Plaintiff has no adequate remedy at law.

**ANSWER:**   Butler denies the allegations contained in paragraph 131 of Plaintiff's Amended Complaint.

132.   Plaintiff has a substantial likelihood of success on the merits as to his claims.

**ANSWER:**   Butler denies the allegations contained in paragraph 132 of Plaintiff's Amended Complaint.

133.   The threatened injury to Plaintiff outweighs any possible harm to BUTLER.

**ANSWER:**   Butler denies the allegations contained in paragraph 133 of Plaintiff's Amended Complaint.

134.   The granting of a temporary injunction will not disserve the public interest under these circumstances.

**ANSWER:**   Butler denies the allegations contained in paragraph 134 of Plaintiff's Amended Complaint.

135.   Should Plaintiff prevail in this action, he would be entitled to have the temporary injunction made permanent.

**ANSWER:**    Butler denies the allegations contained in paragraph 135 of Plaintiff's Amended Complaint.

## SEPARATE DEFENSES

Subject to a reasonable opportunity for further investigation and discovery, Butler alleges the following additional defenses:

1.    Plaintiff fails to state a claim upon which relief can be granted on his causes of action.

2.    Plaintiff failed to exhaust his administrative remedies prior to filing suit.

3.    Plaintiff's claims are barred, in whole or in part, by applicable statute of limitations.

4.    Butler denies every allegation whether express or implied, that is not unequivocally and specifically admitted in the Answer.

5.    Butler reserves the right to assert additional affirmative defenses and defenses as may appear applicable during the course of this litigation.

WHEREFORE, Butler denies that Plaintiff is entitled to any relief under his Amended Complaint or any of the averments contained therein.  Butler respectfully requests that Plaintiff take nothing by way of his Amended Complaint, that the Court enter judgment in Butler's favor, and that Butler receive all appropriate relief to which it may be justly entitled, including reasonable attorney's fees.

Respectfully submitted,

/s/ Craig W. Wiley

CRAIG W. WILEY                          JOHN K. BENNETT
MELISSA K. TAFT                         JACKSON LEWIS P.C.
JACKSON LEWIS P.C.                      220 Headquarters Plaza
10 West Market Street, Suite 2400       East Tower, 7th Floor
Indianapolis, Indiana  46204            Morristown, New Jersey 07960
Telephone: (317) 489-6930               Telephone: (973) 451-6350
Facsimile:  (317) 489-6931              E-mail: *BennettJ@jacksonlewis.com*
E-mail: *Craig.Wiley@jacksonlewis.com*
        *Melissa.Taft@jacksonlewis.com*     *Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on June 29, 2017, I caused a true and correct

copy of the foregoing *Defendant's Answer to Plaintiff's Amended Complaint* to be electronically

filed.  Notice of this filing will be sent to counsel of record via the Court's electronic filing system.

Parties may access this filing through the Court's system.

Andrew M. Kassier                       Christopher A. Wadley
Andrew M. Kassier, P.A.                 WALKER WILCOX MATOUSEK LLP
Dickman Building                        One N. Franklin St., Ste. 3200
4500 Lejeune Road                       Chicago, IL 60606
Coral Gables, FL 33146                  cwadley@wwmlawyers.com
kassiera@aol.com                        *Counsel for Defendant "Jane Smith"*
*Counsel for Plaintiff*

Joseph Damien Ackerman
Scott B. Cockrum
HINSHAW & CULBERTSON LLP
322 Indianapolis Blvd., Suite 201
Schererville, IN 46375
jackerman@hinshawlaw.com
scockrum@hinshawlaw.com
*Counsel for Intervening Party Unitrin
Preferred Insurance Company*

/s/ Craig W. Wiley
Craig W. Wiley

4814-2944-1355, v. 1