IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTIAN AYALA, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO. 1:16-cv-01266-TWP-DLP |
| v. | ) |
| | ) |
| BUTLER UNIVERSITY, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants, Butler University ("Butler" or "the University"), James Danko, Levester Johnson, Stacie Colson Patterson, Anne Flaherty, Sally Click, Erin McCluney, Robert Padgett, and Martha Dwizlik (collectively the "Individual Defendants") submit this reply in support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1.

**I.     INTRODUCTION**

Plaintiff Christian Ayala concedes that all of his claims, with the exception of the Title IX claim against Butler,[1] are subject to summary judgment. (Dkt. No. 157 at 1-2.) Thus, all the claims against the Individual Defendants (which include Counts III, V, VII, and VIII) have been abandoned and the Court should enter summary judgment in the Individual Defendants' favor. The Court should also enter summary judgment in Butler's favor as to Counts I, II, V, VI, VII, and VIII based on Ayala's concession that summary judgment is appropriate as to these claims.

As for his Title IX claim against the University, Ayala argues that there are two facts that preclude summary judgment. First, he argues that questioning by one of the hearing panel members, Sally Click, regarding verbal consent to sexual activity "indicated gender bias" against him. Second, Ayala argues that Butler disciplined him more harshly than one other *male* student who was found responsible for the same

---

[1] Plaintiff initially brought the Title IX claim against both Butler and the Individual Defendants, but the Court dismissed this claim against the Individual Defendants because there is no personal liability under Title IX. (Dkt. No. 122.)

policy violation. Neither of these "facts" creates a genuine issue regarding whether Butler discriminated against Ayala because of his gender during the disciplinary process. Ms. Click's questioning was entirely appropriate and did not demonstrate any gender bias. This is especially true because the panel's deliberation report does not reflect that it found Ayala responsible for non-consensual sexual activity because he did not contain verbal consent from E.S. And the fact that the University may have treated a *male* student more favorably than Ayala does not show that he was treated differently because of his gender. The Court should therefore enter summary judgment in Butler's favor on Ayala's Title IX claim.

**II.     REPLY TO PLAINTIFF'S "STATEMENT OF FACTS IN OPPOSITION TO SUMMARY JUDGMENT"**

At the outset, Ayala accepts *all* of the facts in Defendants' "Statement of Material Facts Not in Dispute" (Dkt. No. 135 at 2-14) as accurate and incorporates them in his Response brief. (Dkt. 157 at 2.) Because Ayala did not contest any of Defendants' material facts, the Court should admit them as uncontested for purposes of summary judgment. *See* S.D. Ind. L.R. 56-1(f)(1).

Ayala nevertheless argues that there are two material facts – one of which was included in Defendants' Statement of Material Facts, and one of which was not – that preclude summary judgment. The first "fact" is Ms. Click's questioning of Ayala at the grievance hearing, which he claims implied that "he was a 'predatory' male student who posed a threat to Defendants' female students." (Dkt. No. 157 at 3.) Ayala testified to this questioning during his deposition, which is set forth in both Defendants' Brief (Dkt. No. 135 at 12-13) and Ayala's Response Brief (Dkt. No. 157 at 4-6.) Cutting through all of Ayala's cited testimony, much of which is his opinion regarding Ms. Click's questioning, the only *fact* is what Ms. Click actually asked him during the hearing that allegedly showed bias. As to this point, Ayala testified:

> Q: Do you have a specific recollection of what questions she asked you thought were biased?
>
> A: I believe she asked twice if I got verbal consent. She asked me – I can't remember the specifics of what the questions, but it was along the lines of "What made you think that there was consent."
>
> . . .
>
> Q: Well, don't you think it's reasonable for her to ask whether you obtained verbal consent?

> A: Oh, it's reasonable, but it doesn't – she asked it multiple times, and the wording was almost as if what she wanted – what she was looking for was a verbal consent. I feel like her questions in a sense almost showed that she lacked understanding of the rules.

(Dkt. No. 137-1, Def. Ex. A, pp. 165-167.) Thus, Ayala's argument is that a reasonable jury could conclude that Butler decided to expel him on the basis of his gender because Ms. Click asked him twice whether he obtained verbal consent during the grievance hearing. For the reasons fully set forth below in the argument section, this questioning does not cast doubt on the outcome of the disciplinary proceedings, nor does it suggest gender bias was a motivation behind expelling Ayala.

Ayala next argues that there is a genuine issue of material fact on the Title IX claim because Martha Dwizlik testified that one male student was disciplined less harshly than Ayala after the grievance panel found this student responsible for violating Butler's policy on nonconsensual sexual activity. (Dkt. No. 137-2, Def. Ex. B, pp. 40-41.) Specifically, the student had his diploma withheld for one year instead of being expelled from school. But Ayala fails to mention that this incident happened two days before both the complainant and the accused male student were going to graduate, meaning that the male student would have already completed his degree at the time of the alleged sexual assault. (*Id.*) This fact distinguishes Ayala's case from this student's, as Ayala was a first year student at the time E.S. brought her complaint against him. It would have been nonsensical for Butler to "withhold" a diploma that he could not have earned for another *three years*. But even if their cases were not distinguishable, this evidence fails to create a genuine issue of material fact on Ayala's Title IX claim against Butler because – as set forth below – it does not show *gender* bias.

**III.    ARGUMENT**

Ayala affirms in his Response that he is bringing an "erroneous outcome" claim under the framework established by *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2nd Cir. 1994). To establish his erroneous outcome claim, Ayala "must first allege particular facts sufficient to cast doubt on the accuracy of the outcome of the proceedings and then also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Doe v. Purdue Univ.*, 281 F. Supp. 3d 754, 774 (N.D. Ind. Nov. 15, 2017) (quoting *Yusuf*, 35 F.3d at 715). As stated above, Ayala relies on two alleged

material facts to defeat summary judgment: (1) that Ms. Click asked him twice if he obtained verbal consent to sexual activity with E.S. and (2) that a male student found responsible for the same policy violation was not expelled, but had his diploma withheld for a year.  These facts are insufficient to cast doubt on the accuracy of the outcome of Butler's disciplinary proceedings or to suggest gender bias motivated Butler's decision to expel Ayala.

With respect to Ms. Click's questioning, as even Ayala admits in his deposition testimony, it was reasonable for Ms. Click to ask Ayala if he obtained verbal consent.  Butler's Policy specifically defines consent as "knowing, voluntary and clear permission *by word* or action, to engage in mutually agreed upon sexual activity." (Dkt. No. 137-2, Def. Ex. B, p. 23; Policy, Deposition Ex. A, p. 9.)  The Policy therefore specifically reflects that consent may be obtained verbally, so Ms. Click asking Ayala if he obtained verbal consent was entirely appropriate.  The fact that she asked him this question twice does not establish that she believed this was the only way to obtain consent or that she was "biased" against Ayala; rather, she could have been trying to clarify his earlier answer or rephrase the question to ensure she understood his response.  Ayala's contention that her merely asking the question – even twice – showed bias or a "lack of understanding" regarding consent is pure speculation, and speculation cannot defeat summary judgment. *See Houlihan v. City of Chicago*, 871 F.3d 540, 554 (7th Cir. 2017); *see also Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors, and '[d]iscrimination law would be unmanageable if disgruntled employees . . . could defeat summary judgment by affidavits speculating about the defendant's motives.'")

Additionally, Ms. Click's questioning does not cast doubt on the accuracy of the panel's decision because the panel's deliberation report does not reflect that the panel found against Ayala simply because he did not obtain *verbal* consent.  Rather, the report specifically reflects that the panel found that Ayala "did not indicate any specific actions that he took to get consent either by *word or action*" and that E.S. did not give consent and told Mr. Ayala to "stop it, it hurts" twice. (Dkt. No. 137-4, Def. Ex. D, ¶ 7, Hearing Deliberation Report, Brennan Decl. Ex. 4.)  Clearly, the panel understood that consent could be obtained

4

either verbally or by action, so there is no evidence that Ms. Click's questioning demonstrated she or the other panel members misunderstood the Policy. The panel's decision regarding non-consensual sexual intercourse was also *unanimous*, meaning that the other two panel members – whom Ayala does *not* accuse of bias or a "lack of understanding – also found that he violated the policy. (*Id.*) Accordingly, Ms. Click asking Ayala twice whether he obtained verbal consent does not cast doubt on the accuracy of the entire panel's decision to hold Ayala responsible for violating Butler's Policy.

Even if Ayala had made the case that Ms. Click's questioning did somehow cast doubt on the entire disciplinary hearing and the panel's decision, Ayala has still not articulated how this demonstrates *gender* bias. In his Response, Ayala argues that Ms. Click was "hyperfocuse[d] on consent through words, despite undisputed (and overwhelming) testimony from both Plaintiff and E.S., as well as other students who saw the two of them together for an extended period of time the night of the incident, indicating that the acts of sexual consent were consensual." (Dkt. No. 157.) This misrepresents the submitted evidence. There is no evidence that Ms. Click was "hyperfocused" on verbal consent; Ayala's testimony was that she merely asked him twice whether he obtained verbal consent. And there is certainly no evidence that the testimony at the hearing "overwhelmingly" indicated – or indicated at all – that all sexual activity between Ayala and E.S. was consensual. Ayala does not seem to understand that consent to *some* sexual activity – such as kissing – does not constitute consent to *all* sexual activity. Butler's definition of consent requires "clear expression in words or actions that the other individual consented *to that specific sexual conduct*." (Dkt. No. 137-2, Def. Exhibit B, p. 23; Deposition Exhibit A at p. 11.) Ayala's mere unsupported assertion that the panel weighed the evidence incorrectly against him does not demonstrate gender bias. *See Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) ([A plaintiff] is only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture.") (internal citations and quotations omitted).

Ayala also argues that the entire investigation focused on E.S. as a "victim" and Ayala as an "assailant" and that the panel failed to consider that E.S. might also have violated the school's policy on obtaining consent. (Dkt. No. 157 at 7.) This argument is completely undeveloped and fails to cite *any*

5

evidence to support it. What evidence is there to suggest that Ayala ever accused E.S. of nonconsensual sexual activity? Ayala's testimony during the disciplinary proceedings was that all sexual activity between him and E.S. was consensual. If anything, the submitted evidence undercuts Ayala's argument that Butler always treats accused male students as guilty "assailants." In the majority of the cases investigated by Martha Dwizlik into nonconsensual sexual contact – six out of eleven – the male student was found *not* responsible after either the investigation or the hearing. (Dkt. No. 137-2, Def. Exhibit B, p. 23; Deposition Exhibit C.)

Plaintiff's final argument to show gender bias is that E.S. and her "close friends," some of whom testified at the hearing as witnesses, were all female. (Dkt. No. 157 at 8.) There is nothing extraordinary about a female student having close female friends, and only three of the five student witnesses who testified were female. (Dkt. No. 137-1, Def. Ex. A, p. 172, Ayala Depo. Ex. 13.) Simply because E.S. and *some* of the witnesses at the hearing were female does not demonstrate that the panel was biased against Ayala because he is male. *See Doe v. Baum*, 227 F. Supp. 3d 784, 817 (E.D. Mich. 2017) (dismissing the plaintiff's Title IX claim because "the plaintiff has offered nothing more than an administrative decision by school officials with which he disagreed, and unelaborated allegations that the decision must have been due to 'gender bias,' essentially because he is male, the complainant is female, and the decision was adverse to him.)

With respect to Ayala's second argument – that a male student being given less harsh discipline establishes a question of fact regarding his Title IX claim – Ayala fails to develop this argument in the "Legal Analysis" section of his brief. In fact, he fails to make *any* argument showing how this demonstrates gender discrimination. In any event, to show gender bias, Ayala would need to show more favorable treatment of a similarly situated *female* student, not a male student. If anything, the fact that another male employee was treated differently shows that the difference in treatment was based on factors other than gender, such as different circumstances, mitigating factors, or simply a different hearing panel. Ayala's "comparator" evidence therefore does not show gender bias.

## IV. CONCLUSION

For the reasons set forth above and in Butler's Brief in Support of its Motion for Summary Judgment, Ayala fails to submit any evidence that would allow a reasonable jury to conclude that Butler expelled him in violation of Title IX. Ayala conceded that his other claims are subject to summary judgment. Defendants are therefore entitled to judgment as a matter of law as to all claims and should be awarded its costs and such other relief as the Court deems appropriate.

          Respectfully submitted,

          /s/ Craig W. Wiley
          Craig W. Wiley

| | |
|---|---|
| CRAIG W. WILEY | JOHN K. BENNETT |
| MELISSA K. TAFT | JACKSON LEWIS P.C. |
| JACKSON LEWIS P.C. | 220 Headquarters Plaza |
| 10 West Market Street, Suite 2400 | East Tower, 7th Floor |
| Indianapolis, Indiana 46204 | Morristown, New Jersey 07960 |
| Telephone: (317) 489-6930 | Telephone: (973) 451-6350 |
| Facsimile: (317) 489-6931 | E-mail: BennettJ@jacksonlewis.com |
| E-mail: Craig.Wiley@jacksonlewis.com | |
|        Melissa.Taft@jacksonlewis.com | *Counsel for Defendants* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 2 2018, I filed the foregoing *Defendants' Reply in Support of Motion for Summary Judgment* electronically with the Clerk of the Court. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>Andrew M. Kassier
>Andrew M. Kassier, P.A.
>Dickman Building
>4500 Lejeune Road
>Coral Gables, FL 33146
>kassiera@aol.com

>/s/ Craig W. Wiley
>Craig W. Wiley

4831-0783-5756, v. 1