# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTIAN AYALA, a/k/a JOHN DOE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:16-cv-01266-TWP-DLP |
| BUTLER UNIVERSITY, JAMES M. DANKO, LEVESTER JOHNSON, STACIE COLSON PATTERSON, ANNE FLAHERTY, SALLY CLICK, ERIN MCCLUNEY, ROBERT PADGETT, and MARTHA DWIZLIK, | ) |
| Defendants. | ) |
| UNITRIN PREFERRED INSURANCE COMPANY, | ) |
| Intervenor Plaintiff, | ) |
| v. | ) |
| PRIVILEGE UNDERWRITERS, INC, | ) |
| Intervenor Defendant. | ) |

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on cross-motions for partial summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by Intervenor Plaintiff Unitrin Preferred Insurance Company ("Unitrin") (Filing No. 128) and Intervenor Defendant Privilege Underwriters, Inc. ("PURE") (Filing No. 132). Unitrin and PURE, two insurance companies, seek declaratory judgment regarding their contractual duties to defend Jane Smith, a now terminated defendant in this civil rights and defamation action. For the following reasons, the Court **denies** Unitrin's Motion for Partial Summary Judgment and **grants** PURE's Motion for Partial Summary Judgment.

# I. BACKGROUND

In the fall of 2014, Plaintiff Christian Ayala ("Ayala") was a fulltime, freshman undergraduate student at Defendant Butler University ("Butler") in Indianapolis, Indiana. He was an excellent student, maintaining a "B+" grade point average ([Filing No. 13 at 2](Filing No. 13 at 2), 9).

At approximately midnight on Saturday, April 18, 2015, Ayala decided to attend a party with some friends. While at the party, Ayala approached Jane Smith, a fellow Butler student, and began talking with her. Ayala and Jane Smith began dancing together and eventually left the party together around 2:00 a.m. on Sunday, April 19, 2015. Jane Smith informed her girlfriends that she was going back to her own dormitory room. However, Ayala and Jane Smith actually went to Ayala's dorm room where they engaged in sexual activity. After engaging in sexual activity, there was a knock on the bedroom door. Ayala opened the door, whereupon Jane Smith's friend saw her unclothed and demanded to know why she had lied about going back to the dorm. Jane Smith was humiliated and embarrassed, so she told her friend that she had been sexually assaulted by Ayala. *Id.* at 9–13.

Butler began an investigation of the alleged sexual assault on April 20, 2015, but before the investigation even began, Jane Smith's father exerted pressure on Butler to expel Ayala. *Id.* at 13. Defendant Martha Dwizlik ("Dwizlik"), a Butler employee, conducted the investigation of the allegation. Sometime later, Dwizlik acknowledged being told by Jane Smith that Jane Smith allowed Ayala to undress her without any objection while they were in his dorm room. *Id.* at 14.

A university grievance hearing was held against Ayala on May 14, 2015. *Id.* at 15. At the grievance hearing, "'JANE SMITH' herself testified that **she never said or did anything to indicate to Plaintiff, either before or during their physical contact, that she was not consenting to same**." ([Filing No. 13 at 2](Filing No. 13 at 2) (emphasis in original).) The overwhelming evidence

2

presented at the hearing was that the sexual activity between Ayala and Jane Smith was consensual. However, the grievance panel placed the burden on Ayala to prove his innocence, and the panel decided that the proper outcome was to expel Ayala from Butler. Ayala attempted to reverse the panel's decision through Butler's administrative appeals process, but his efforts were unavailing. *Id.* at 2–4. No grievance proceedings were ever initiated against Jane Smith. *Id.* at 2.

The alleged non-consensual sexual activity occurred on April 19, 2015; the panel convened a one-day hearing on May 14, 2015; and Ayala was "served with the Final Determination letter on May 18, 2015, which informed him of the Panel's decision and the sanction imposed by the school." *Id.* at 5. The panel recommended expulsion. After being expelled from Butler, Ayala suffered emotional distress and applied to attend various other universities. His applications were rejected by seven universities because of his expulsion from Butler. *Id.* at 6.

On May 23, 2016, Ayala initiated this lawsuit against Butler, Jane Smith,[1] and various Butler employees who participated in his expulsion. Ayala asserted claims for civil rights violations, defamation, breach of contract, negligent infliction of emotional distress, and other tort claims ([Filing No. 13](#)). In April 2017, Unitrin filed a Motion to Intervene in this action because it had issued an insurance policy to Jane Smith's parents, Jane Smith asserted that Unitrin's coverage might be implicated, and Unitrin wanted a declaratory judgment to determine whether its policy was implicated ([Filing No. 43](#)). Smith's parents also had a homeowners and umbrella policy with PURE issued on April 29, 2015 with coverage through April 29, 2016. ([Filing No. 133-1](#).) In September 2017, Unitrin amended its intervenor complaint to add PURE as an intervenor defendant, asserting that PURE owed a duty to defend Jane Smith against Ayala's complaint and

---

[1] Ayala's claims against Jane Smith, Jane Smith's counterclaims against Ayala, Jane Smith's counterclaim against Unitrin, and Jane Smith's crossclaim against PURE have been resolved through voluntary or stipulated dismissals ([Filing No. 107](#); [Filing No. 125](#)).

3

to reimburse Unitrin for defense costs ([Filing No. 78](#)). In April 2018, Unitrin and PURE filed their cross-motions for summary judgment ([Filing No. 128](#); [Filing No. 132](#)).

## II.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits

4

of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III. DISCUSSION

Unitrin has moved for summary judgment, asking the Court to declare the contractual duties to defend Jane Smith in this action. In particular, Unitrin seeks a declaration that PURE owes a duty to defend Jane Smith and that PURE must reimburse Unitrin for defense costs that Unitrin has incurred in this action while defending Jane Smith. Conversely, PURE asks the Court to declare through summary judgment that it owes no duty to defend Jane Smith or reimburse Unitrin because PURE's insurance policy was not in effect at the relevant time.

> The construction of an insurance contract is a question of law for which summary judgment is particularly appropriate. When the policy language of an insurance contract is clear and unambiguous, we will give the language its plain and ordinary meaning. . . . An insurer's duty to defend its insureds is broader than

5

its coverage liability or duty to indemnify. However, we determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation. If the pleadings reveal that a claim is clearly excluded under the policy, then no defense is required.

*Jim Barna Log Sys. Midwest, Inc. v. General Cas. Ins. Co. of Wisconsin*, 791 N.E.2d 816, 823 (Ind. Ct. App. 2003) (citations and quotation marks omitted).

PURE acknowledges in its answers to interrogatories that the PURE homeowners and umbrella policies providing insurance to Jane Smith were in effect for a policy period beginning April 29, 2015 ([Filing No. 129-1 at 5](Filing No. 129-1 at 5)).

Unitrin argues that the face of Ayala's Amended Complaint shows that PURE's duty to defend Jane Smith was triggered. Unitrin asserts that the Amended Complaint alleges negligent infliction of emotional distress from instances which occurred after the policy start date of April 29, 2015. Specifically, the Amended Complaint alleges that Jane Smith pressured Butler to take action against Ayala throughout the investigation and hearing process. Jane Smith gave testimony at the May 14, 2015 hearing, and then Ayala was expelled from Butler on May 18, 2015. Ayala's defamed character and emotional distress continued past his Butler expulsion. Unitrin argues that since the grievance hearing and the expulsion from Butler both occurred during PURE's policy period, the Amended Complaint easily triggers PURE's duty to defend Jane Smith.

PURE responds that Ayala clearly alleges in the Amended Complaint that non-party, Bill Smith, Jane's father, placed extreme pressure on Butler to expel Ayala before Butler's investigation started on April 20, 2015, which was before PURE's policy took effect. The investigation and the grievance hearing and all that followed the hearing were a result of Butler's actions, not Jane Smith's actions, and PURE insured Jane Smith, not Butler. The only potentially actionable conduct of Jane Smith was the false statement she made to her friend on April 19, 2015,

that Ayala had sexually assaulted her. "Plaintiff's theories of recovery concede Jane abandoned her April 19, 2015 statement about her non-consensual sexual relationship with plaintiff in subsequent acts and testimony, making April 19, 2015 the only date for allegedly actionable conduct by Jane." ([Filing No. 133 at 5](#).) PURE asserts that, because all the conduct following the April 19, 2015 statement are attributable to Butler, not Jane Smith, PURE has no duty to defend because it did not insure Butler.

The Court agrees with PURE. The undisputed fact is that PURE's policies of insurance issued to Jane Smith were in effect beginning on April 29, 2015. The Amended Complaint alleges that any actionable conduct committed by Jane Smith (and her father) occurred prior to the effective date of the PURE policy. The Amended Complaint alleges as follows:

"[I]n the spring of 2015, [Ayala] was falsely accused by a fellow student, 'JANE SMITH', of non-consensual sexual activity. Her allegations led to a formal grievance being filed by BUTLER against Plaintiff, which gave him certain very limited rights to due process . . . ." ([Filing No. 13 at 2](#).) "Virtually all of the events upon which Plaintiff's Complaint is based occurred in the evening hours of April 18, 2015 and the early morning hours of April 19, 2015." ([Filing No. 13 at 9](#).) On April 19, 2015, "Plaintiff opened the door, whereupon the friend (Loughman) saw 'JANE SMITH' unclothed, and demanded to know why she ('JANE SMITH') had lied to her about going back to the dormitory. [] 'JANE SMITH', obviously humiliated and embarrassed, then told her friend that she ha[d] been sexually assaulted by Plaintiff." ([Filing No. 13 at 13](#).)

"Plaintiff also believes that improper pressure was brought to bear by both the complaining student, 'JANE SMITH', and her father, for BUTLER to expel him, even before the school's investigation had begun and well before the grievance proceedings commenced." ([Filing No. 13 at 5](#), 13.) "Butler's investigation began on or about April 20, 2015." ([Filing No. 13 at 13](#).)

7

These allegations assert conduct by Jane Smith and her father on April 18–20, 2015, before PURE's insurance policy took effect. Citing paragraphs 56 and 61 of the Amended Complaint, Unitrin asserts, "Ayala alleged that Smith testified inaccurately at the Grievance hearing on May 14, 2015, but was not asked all questions his counsel presented. The panel then reached its conclusion and Ayala was expelled from Butler on May 18, 2015." ([Filing No. 129 at 4](Filing No. 129 at 4).) However, the paragraphs cited do not support Unitrin's assertion that Ayala alleged Jane Smith testified inaccurately at the hearing. Nowhere in the Amended Complaint does Ayala allege that Jane Smith testified inaccurately at the hearing. In fact, the Amended Complaint alleged that Jane Smith "herself testified [at the hearing] that she never said or did anything to indicate to Plaintiff, either before or during their physical contact, that she was not consenting to same." ([Filing No. 13 at 2](Filing No. 13 at 2).)

After quoting paragraph 124 of the Amended Complaint, Unitrin argues, "That SMITH did participate in the disciplinary hearings in an alleged breach of the duty alleged to be owed should at least potentially constitute an 'occurrence' under the PURE policy, thus giving rise to an initial duty to defend on the part of PURE." ([Filing No. 146 at 6](Filing No. 146 at 6).) However, paragraph 124 of the Amended Complaint alleges, "Each and every Defendant owed a duty to Plaintiff to not make false and malicious allegations of sexual misconduct against him and/or to not participate in the disciplinary proceedings for the purpose of furthering the dissemination of those allegations." ([Filing No. 13 at 26](Filing No. 13 at 26).) This unsupported legal conclusion cannot form the basis of liability for Jane Smith that would trigger a duty to defend under PURE's policy. Furthermore, the Amended Complaint alleges in the next paragraph (paragraph 125) that the Defendants' conduct was described with greater specificity earlier in the Amended Complaint. That earlier alleged conduct indicated Jane Smith's actionable conduct took place on April 18–20, 2015, before PURE's insurance policy took effect.

As noted earlier, PURE insured Jane Smith, not Butler. PURE's policy of insurance began on April 29, 2015. The allegations against Jane Smith in the underlying complaint assert actionable conduct on April 18–20, 2015, before PURE's insurance policy took effect. Butler's conduct in April and May 2015 is not attributable to Jane Smith, and thus, does not fall under PURE's insurance policy. Therefore, PURE does not owe coverage to Jane Smith or defense costs to Unitrin.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Intervenor Plaintiff Unitrin Preferred Insurance Company's Motion for Partial Summary Judgment ([Filing No. 128](#)), and **GRANTS** Intervenor Defendant Privilege Underwriters, Inc.'s Motion for Partial Summary Judgment ([Filing No. 132](#)). PURE does not owe a duty to defend Defendant Jane Smith in this action, and it does not owe reimbursement to Unitrin for the defense costs that Unitrin incurred while defending Jane Smith in this action. Because all claims involving Unitrin and PURE are fully adjudicated, these two parties are **terminated** from this action.

**SO ORDERED.**

Date: 10/17/2018

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew M. Kassier
ANDREW M. KASSIER, P.A.
kassiera@aol.com

Stephen V. Freeze
FREUND FREEZE & ARNOLD
sfreeze@ffalaw.com

John K. Bennett
JACKSON LEWIS PC
bennettj@jacksonlewis.com

Joseph Damien Ackerman
HINSHAW & CULBERTSON
jackerman@hinshawlaw.com

Scott B. Cockrum
HINSHAW & CULBERTSON
scockrum@hinshawlaw.com

Mark C. Engling
FREUND FREEZE & ARNOLD
mengling@ffalaw.com

Melissa K. Taft
JACKSON LEWIS PC
melissa.taft@jacksonlewis.com

Craig W. Wiley
JACKSON LEWIS PC
craig.wiley@jacksonlewis.com